

Your Missouri Courts | Missouri Case.net | Search for Cases by: Select Search Method...

Judicial Links | eFiling | Help | Contact Us | Print | Logon

## 1922-CC11491 - LESLIE C BURKEMPER V AXA EQUITABLE LIFE INS ET AL (E-CASE)

Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution

This information is provided as a service and is not considered an official court record.

**Sort Date Entries:** Descending Ascending **Display Options:** All Entries

| | |
|---|---|
| **10/16/2019** | **Return Service - Other**<br>Document ID - 19-SMCC-20395; Served To - DISABILITY MANAGEMENT SERVICES, INC.; Server - ; Served Date - 04-OCT-19; Served Time - 00:00:00; Service Type - Sheriff Department; Reason Description - Served |
| **09/25/2019** | **Jury Trial Scheduled**<br>**Scheduled For:** 03/09/2020; 9:00 AM ; REX M BURLISON; City of St. Louis |
| **09/18/2019** | **Entry of Appearance Filed**<br>Entry of Appearance; Electronic Filing Certificate of Service.<br>**Filed By:** MICHAEL JOSEPH PAYNE<br>**On Behalf Of:** LESLIE CAROLE BURKEMPER |
| **09/13/2019** | **Summons Issued-Circuit**<br>Document ID: 19-SMCC-20395, for DISABILITY MANAGEMENT SERVICES, INC.. |
| | **Summons Issued-Circuit**<br>Document ID: 19-SMCC-20394, for AXA EQUITABLE LIFE INSURANCE COMPANY. |
| | **Filing Info Sheet eFiling**<br>**Filed By:** MARY ELIZABETH PARATO |
| | **Pet Filed in Circuit Ct**<br>Petition; Exhibit A.<br>**Filed By:** MARY ELIZABETH PARATO<br>**On Behalf Of:** LESLIE CAROLE BURKEMPER |
| | **Judge Assigned** |

Case.net Version 5.14.0.16 Return to Top of Page Released 10/24/2019

**Pleadings in state court** **Exhibit A**



null / ALL
**Transmittal Number: 20486481**
**Date Processed: 10/03/2019**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Twonya Hill<br>AXA Equitable<br>8501 Ibm Dr<br>Ste 150<br>Charlotte, NC 28262-4333 |
| **Electronic copy provided to:** | Tammy Blume<br>Rocio Osejo<br>Monica Adderley |

| | |
|---|---|
| **Entity:** | AXA Equitable Life Insurance Company<br>Entity ID Number  3154360 |
| **Entity Served:** | AXA Equitable Life Insurance Company |
| **Title of Action:** | Leslie Carole Burkemper vs. AXA Equitable Life Insurance Company |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | St. Louis City Circuit Court, MO |
| **Case/Reference No:** | 1922-CC11491 |
| **Jurisdiction Served:** | Missouri |
| **Date Served on CSC:** | 10/02/2019 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Mary E. Parato<br>314-725-8000 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

**Pleadings in state court**                                                                 **Exhibit A**



**IN THE 22ND JUDICIAL CIRCUIT, CITY OF ST LOUIS, MISSOURI**

| Judge or Division:<br>REX M BURLISON | Case Number:  1922-CC11491 | Special Process Server 1 |
|---|---|---|
| Plaintiff/Petitioner:<br>LESLIE CAROLE BURKEMPER | Plaintiff's/Petitioner's Attorney/Address<br>MARY ELIZABETH PARATO<br>231 S  BEMISTON AVENUE STE 111<br>CLAYTON, MO  63105 | Special Process Server 2 |
| vs. | | Special Process Server 3 |
| Defendant/Respondent:<br> AXA EQUITABLE LIFE INSURANCE<br>COMPANY | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD<br>SAINT LOUIS, MO  63101 | |
| Nature of Suit:<br>CC Breach of Contract | | (Date File Stamp) |

## Summons in Civil Case

| The State of Missouri to:  AXA EQUITABLE LIFE INSURANCE COMPANY | |
|---|---|
| **Alias:** | **COLE COUNTY** |

CSC LAWYERS INC SERVICE CO
221 BOLIVAR STREET
JEFFERSON CITY, MO  65101
*COURT SEAL OF*

*CITY OF ST LOUIS*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

**September 13, 2019** _____

          Date                                                      Clerk

Further Information:

### Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to:
_____ (name) _____ (title).

☐ other: _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____            _____

    Printed Name of Sheriff or Server                        Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*          Subscribed and sworn to before me on _____ (date).

My commission expires: _____      _____

                                       Date                      Notary Public

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $___10.00____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | $_____ |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (06-18) SM30 (SMCC) *For Court Use Only:* **Document Id # 19-SMCC-20394**    1 of 1    Civil Procedure Form No. 1; Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

**Pleadings in state court**                                    **Exhibit A**

**1922-CC11491**

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI

| | | |
|---|---|---|
| LESLIE CAROLE BURKEMPER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Cause No.:** |
| vs. | ) | |
| | ) | **Division No.:** |
| AXA EQUITABLE LIFE INSURANCE | ) | |
| COMPANY | ) | |
| **Serve at:** | ) | |
| **CSC-Lawyers Incorporating Service** | ) | |
| **Company** | ) | |
| **221 Bolivar Street** | ) | |
| **Jefferson City, MO 65101** | ) | |
| | ) | |
| DISABILITY MANAGEMENT | ) | |
| SERVICES, INC. | ) | |
| **Serve at:** | ) | |
| **Registered Agent Solutions, Inc.** | ) | |
| **3225-A Emerald Lane** | ) | |
| **Jefferson City, MO 65109** | ) | |
| | ) | |
| JOHN DOE | ) | |
| | ) | |
| **Hold For Service** | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## <u>PETITION</u>

COMES NOW Plaintiff Leslie Carole Burkemper, by and through her undersigned counsel, and for her Petition against Defendants AXA Equitable Life Insurance Company, Disability Management Services, Inc. and John Doe, states as follows:

### <u>The Parties</u>

1.     Plaintiff Leslie Carole Burkemper (hereinafter, "Carole") is an individual residing in St. Louis City, Missouri.

**Pleadings in state court**                                    **Exhibit A**

2.     Defendant AXA Equitable Life Insurance Company (hereinafter, "AXA") is a foreign corporation organized and existing under the laws of the State of New York, with its principal place of business or headquarters located at 1290 Avenue of the Americas, New York, New York 10104, is registered in the State of Missouri as a foreign insurance company and is regulated by the Missouri Department of Insurance.

3.     Defendant Disability Management Services, Inc. (hereinafter, "DMS") is a foreign corporation organized and existing under the laws of the State of Connecticut, with its principal place of business or headquarters located at 1350 Main Street, 17th Floor, Springfield, Massachusetts 01103, and is registered to do business in the State of Missouri.

4.     Upon information and belief, Defendant John Doe is an individual residing in the State of Missouri.

<u>**Venue and Jurisdiction**</u>

5.     Venue is proper in this Court pursuant to Missouri Revised Statute § 508.010, insofar as the actions giving rise to Carole's cause of action occurred in St. Louis City and Plaintiff's cause of action includes at least one count alleging a tort.

6.     Jurisdiction is proper within this Court as the amount in controversy exceeds $25,000.00.

7.     AXA is registered to conduct business in the State of Missouri and has transacted business in the State of Missouri in that AXA has sold long-term disability insurance policies in this State and sold the long-term disability insurance policy that is the subject matter of this action within the State of Missouri, made contracts within the State of Missouri and contracted to insure persons, property and/or risk located within the State of Missouri.

8.     DMS has at all relevant times herein acted as the authorized third party administrator, representative and agent of AXA.

2

**Pleadings in state court**                                      **Exhibit A**

9.     John Doe was at all times relevant herein registered with the State of Missouri as an insurance broker and sold Carole the insurance policy that is the subject matter of this action.

### Facts Common to all Counts

10.     Carole purchased an insurance policy (hereinafter, the "Policy") from The Equitable Life Assurance Society of the United States, which later changed its name to AXA Equitable Life Insurance Company. A true and correct copy of the Policy is attached hereto and incorporated herein by reference as **Exhibit A**.

11.     DMS is a third party administrator for AXA Equitable Life Insurance Company and is the entity that administers the Policy.

12.     DMS, as third party administrator, handles the processing, administrative decisions and claim decisions, and issues the benefit checks on behalf of AXA.

13.     According the DMS's website, "DMS is a leading independent third party administrator and consulting firm, specializing in all aspects of the development and management of individual and group disability insurance products."

14.     Carole filed a claim for benefits in March of 2000 for a claim commencing on January 28, 2000, based on her diagnosis of chronic severe genetic depression with suicidal ideations.

15.     AXA approved Carole's above mentioned claim, found that Carole was "Totally Disabled" pursuant to the Policy and that the claim commenced on January 28, 2000, and began reimbursing Carole pursuant to the Policy.

16.     The Policy defines "Sickness" as the insured's sickness or disease which is first diagnosed or treated while the Policy is in force.

**Pleadings in state court**                                                      **Exhibit A**

17.     The Policy defines "Injury" as the insured's accidental bodily injury which occurs while the Policy is in force.

18.     The Policy defines "Disabled", "Disability" and "Total Disability" as the insured's inability due to Injury or Sickness to engage in the substantial and material duties of the insured's regular occupation, or, after such Disability has lasted continuously for 120 months past the end of a 90 day period, as the insured's inability to engage in the substantial and material duties of any occupation for which the insured's education, training or experience reasonably qualifies him or her.

19.     The Policy defines "Accident Total Disability" as a Disability caused by Injury.

20.     The Policy defines "Sickness Total Disability" as a Disability caused by or contributed to by Sickness, or by bodily or mental infirmity, but any Disability caused by or contributed to by bodily or mental infirmity is not Accident Total Disability.

21.     DMS has acknowledged that Carole has a Total Disability that is a due to a Sickness and that Carole has been receiving Total Disability benefits since January 28, 2000.

22.     Under the Policy, Sickness Total Disability benefits cease when the insured attains the age of 70.

23.     Accident Total Disability benefits continue for the life of the insured.

24.     DMS determined that Carole was receiving Accident Total Disability benefits because she was receiving benefits for her lifetime.

25.     In a letter dated June 21, 2011, Carole's claim consultant from DMS, Heather Law Bonney, represented that Carole was receiving Total Disability benefits and that benefits under the Policy are payable for Carole's entire lifetime.

4

**Pleadings in state court**                                           **Exhibit A**

26.     In addition to this written confirmation, Heather Law Bonney made several oral representations that Carole was receiving lifetime Total Disability benefits, and Kathy Klimonski, the DMS claim consultant assigned to the Policy and Carole's claim before Heather Law Bonney, also represented on several occasions that Carole would receive Total Disability benefits for the duration of Carole's life.

27.     Based on these representations, Carole believed that she was entitled to lifetime benefits under the Policy.

28.     Contrary to this prior decision, in 2014 and in 2018, DMS retracted its representation that Carole would receive benefits payable for her life without adequate explanation and indicated that Carole would need to qualify for Accident Total Disability benefits in order to receive benefits payable for her life.

29.     Carole informed DMS that she is, in addition to being Totally Disabled due to Sickness, Totally Disabled due to Injury because she had sustained injuries from several different accidents.

30.     Carole had already informed DMS that she fell in her home in September of 2006 and was subsequently treated for multiple tendon tears in her right calf, and that Carole experiences continuous severe pain in her lumbar sacral area, right hip, right calf and right heel after her tendons healed.

31.     Carole had also already informed DMS that in 2007, she had surgery subsequent to her September 2006 fall where three rods and 13 screws were inserted into her spinal cord.

32.     Carole had also already informed DMS that she experienced a twisting fall in July of 2008 and was subsequently hospitalized, and that she was involved in a car accident in November of 2008 that caused further severe and debilitating pain.

5

**Pleadings in state court**                                      **Exhibit A**

33.     Carole had also already informed DMS that she has to use a walker for stabilization and safety, sits with two heating pads on her back and right hip daily because she is unable to walk without experiencing pain, is required to see physicians at Pain Management Services every other month, and is prescribed multiple pain medications.

34.     Carole had also already informed DMS that her two falls and car accident described above resulted in serious and debilitating injuries which have caused Carole to suffer unrelenting, severe and disabling pain.

35.     The injuries that Carole has suffered and the resulting pain have, independently from her diagnosis of chronic severe genetic depression with suicidal ideations that has entitled her to receive Total Sickness Disability benefits, prevented Carole from pursuing any occupation of which she is otherwise qualified to perform.

36.     Carole's injuries that resulted from her two falls and car accident have caused her to be Totally Disabled as defined by the Policy.

37.     Carole's injuries that resulted from her two falls and car accident have caused her to be Totally Disabled due to an Injury as defined by the Policy and would have caused her to be Totally Disabled due to an Injury regardless of her previous diagnosis of chronic severe genetic depression with suicidal ideations.

38.     DMS represented to Carole that it would review any information submitted by Carole in support of her claim for Accident Total Disability.

39.     Based upon DMS's representations, Carole provided a letter detailing her above described accidents and surgeries, including dates and details of the occurrence, a list of her treating physicians and medical records.

6

**Pleadings in state court**                                                      **Exhibit A**

40.     DMS reversed its prior decision that Carole was receiving lifetime disability benefits and informed Carole that, in order to qualify for Accident Total Disability benefits, Carole must recover from her Sickness Total Disability or provide evidence that reflects that Carole suffered Accidental Injuries prior to 2000 which rendered her Totally Disabled.

41.     DMS also informed Carole that, even if her injuries from her two falls and car accident contribute to her Disability, the Policy states that Disability caused or contributed by "mental infirmity" is not Accident Total Disability, and that Carole's psychiatric conditions contribute to her ongoing Total Disability, and that, consequently, DMS will continue to administer her claim as a Sickness Total Disability.

42.     Nowhere in the Policy does it require that, in order to be eligible for lifetime benefits for an Accident Total Disability, Carole must either recover from her Sickness Total Disability and subsequently become Totally Disabled due to Injury or establish that she was Totally Disabled due to Injury prior to her being Totally Disabled due to Sickness.

43.     DMS is wrongfully imposing a requirement beyond the terms of the Policy.

44.     Carole suffered accidental bodily injury as a result of her two falls and car accident and therefore Carole suffered an Injury as defined by the Policy.

45.     Carole's injuries from the two falls and car accident occurred independent of her chronic severe genetic depression with suicidal ideations.

46.     Even if Carole was not diagnosed with chronic severe genetic depression with suicidal ideations and was not Totally Disabled due to the same, Carole would be unable to engage in substantial and material duties of any occupation for which Carole's education, training or experience reasonably qualifies her as a result of her injuries from her two falls and car accident.

7

**Pleadings in state court**                                                    **Exhibit A**

47.     Carole is Totally Disabled as defined by the Policy and her Disability is caused by her injuries from the two falls and car accident, which Total Disability is completely independent and separate from her Sickness Total Disability.

48.     The policy specifically contemplates that Carole may have concurrent Sickness Total Disability and Accident Total Disability, and the only limitation imposed by the terms of the Policy is that Carole may receive only a single monthly amount for each month of Disability when caused or contributed to by both Injury and Sickness, more than one Sickness or more than one Injury.

49.     Carole's Total Disability is caused by her injuries resulting from her two falls and car accident and independently by her chronic severe genetic depression with suicidal ideations.

50.     Carole's injuries resulting from her two falls and car accident were not caused by or contributed to by her chronic severe genetic depression with suicidal ideations.

51.     DMS informed Carole that she will not receive Total Disability benefits after she attains the age of 70.

52.     Carole provided notice to DMS of her injuries subsequent to their occurrences in a timely manner and immediately after DMS requested the same.

53.     Because DMS had already represented to Carole that she was Totally Disabled and would receive Total Disability benefits for her life, she did not file a formal claim for her injuries resulting from her two falls and car accident, and DMS did not tell Carole to submit a claim for any of her injuries.

54.     The Policy was in effect when Carole's claims arose.

55.     Carole has paid all premiums and otherwise followed all of the requirements of the Policy.

8

**Pleadings in state court**                                                                 **Exhibit A**

56.     The life expectancy for a Caucasian female such as Carole is approximately 81.2 years.

57.     Based on her estimated life expectancy, Carole should receive disability benefits for approximately another 10.2 years, in an amount of approximately Three Hundred Twenty Six Thousand Three Hundred and Eighteen Dollars and Forty Cents ($326,318.40).

58.     AXA and DMS are aware that Carole has chronic severe genetic depression with suicidal ideations and are aware that Carole's condition makes her constantly think about committing suicide.

59.     Despite their awareness of Carole's condition, AXA and DMS still represented that Carole was receiving lifetime disability benefits and retracted such representation.

60.     AXA and DMS completely and without justification disregarded Carole and her interests and denied her claim in order to save money.

## COUNT I – DECLARATORY JUDGMENT
### (AXA and DMS)

61.     Plaintiff hereby restates and incorporates by reference all of the foregoing allegations and facts as if fully set forth herein.

62.     On or about August 27, 1987, for and in consideration of the payment of a stated premium, AXA entered into an agreement with Carole, which is the Policy, to insure against loss resulting from injury or sickness.

63.     Carole has in all respects complied with the terms and conditions of the Policy.

64.     On January 28, 2000, Carole began receiving benefits under the policy for Total Disability.

65.     From 2006 through 2008, Carole experienced two falls and a car accident, which resulted in bodily injury to Carole.

9

**Pleadings in state court**                              **Exhibit A**

66.     Carole notified AXA and DMS of her injuries.

67.     Although initially DMS represented to Carole that she did not need to file a new claim for her injuries that resulted from her two falls and car accident and that she would receive benefits for her lifetime, DMS later changed its position without notice or explanation.

68.     AXA and DMS have now denied coverage and otherwise failed and refused to cover Carole's claims.

69.     Carole is entitled to lifetime benefits under the Policy because she is Totally Disabled due to her injuries.

70.     AXA and DMS breached the Policy when they first represented that Carole was receiving lifetime benefits under the Policy and then later changed its decision and determination of lifetime benefits.

71.     Further, AXA and DMS breached the Policy by not reviewing Carole's claim related to her injuries despite the representations made to Carole that they would review her claim.

72.     A justiciable controversy subject to specific relief by way of a decree exists in that the Court can determine that Carole is Totally Disabled as a result of injury under the Policy and therefore is entitled to lifetime benefits.

73.     Pursuant to the Policy, Carole has a legally protectable interest at stake in that Carole has been denied coverage for a loss covered under the Policy.

74.     There is a question ripe for judicial resolution in that the dispute between Carole and AXA and DMS is developed sufficiently to allow the Court to make an accurate determination of the facts at issue to resolve this conflict by declaring that Carole's injuries have rendered her Totally Disabled due to injury.

75.     There is no adequate remedy at law available.

**Pleadings in state court**                                                     **Exhibit A**

WHEREFORE, Plaintiff Leslie Carole Burkemper requests that this Court enter judgment in her favor and against Defendants AXA and DMS; declare that Carole's injuries have rendered her Totally Disabled and that she is entitled to Accident Total Disability benefits under the policy and/or that she is entitled to disability benefits for the duration of her life; or alternatively award Carole the present value of disability benefits over a period of her remaining life expectancy; award Carole her costs and attorneys' fees; and for such other and further relief as the Court deems just and proper.

<div align="center">

**COUNT II – BREACH OF CONTRACT**
**(AXA and DMS)**

</div>

76.     Plaintiff hereby restates and incorporates by reference all of the foregoing allegations and facts as if fully set forth herein.

77.     Plaintiff is the insured under the Policy.

78.     Defendant AXA issued the Policy and delivered the Policy to Plaintiff.

79.     Plaintiff paid all premiums pursuant to the Policy and fulfilled all other obligations pursuant to the Policy.

80.     Plaintiff has suffered losses due to her injuries resulting from her two falls and car accident.

81.     Plaintiff's injuries resulting from her two falls and car accident are covered losses under the Policy and qualify as "Injuries" as defined by the Policy.

82.     Plaintiff is "Totally Disabled" due to an "Injury" within the meaning of the Policy.

83.     Plaintiff provided notice and proof of her claim pursuant to the Policy.

84.     AXA and DMS breached the Policy by representing to Carole that she would receive disability benefits for her lifetime and later reversing its decision regarding lifetime benefits.

<div align="center">11</div>

**Pleadings in state court**                                                      **Exhibit A**

85.     AXA and DMS anticipatorily breached the Policy by representing that they will cease paying benefits to Carole under the Policy when she attains the age of 70.

86.     AXA and DMS further breached the Policy by failing to recategorize Plaintiff's total disability benefits under the policy as "Accident Total Disability" benefits.

87.     AXA drafted the Policy and therefore its terms should be construed against AXA.

88.     Carole has suffered damages and will continue to suffer damages due to AXA and DMS's conduct.

WHEREFORE, Plaintiff Leslie Carole Burkemper requests that this Court enter judgment in her favor and against Defendants AXA and DMS; award Carole disability benefits for the duration of her life; or alternatively award Carole the present value of disability benefits over a period of her remaining life expectancy; award Carole her costs and attorneys' fees; and for such other and further relief as the Court deems just and proper.

## COUNT III – NEGLIGENCE
### (AXA and DMS)

89.     Plaintiff hereby restates and incorporates by reference all of the foregoing allegations and facts as if fully set forth herein.

90.     AXA and DMS had a duty to administer the Policy in Carole's best interest and provide Carole with accurate information and proper instruction in order to receive benefits under the Policy.

91.     AXA and DMS represented to Carole that she would receive disability benefits for her entire lifetime.

92.     AXA and DMS later retracted its decision that Carole would receive disability benefits for her entire lifetime.

12

93.     AXA and DMS were negligent because they breached their duties owed to Carole by failing to provide accurate information or proper instructions to Carole regarding the Policy.

94.     AXA and DMS were further negligent by making the above representation to Carole and later reversing its decision.

95.     AXA and DMS were further negligent by failing to properly analyze Carole's disability benefits under the Policy.

96.     AXA and DMS were further negligent by failing to instruct Carole to file a formal claim for her injuries resulting from her two falls and car accident.

97.     AXA and DMS were further negligent by failing to review Carole's claim for her injuries resulting from her two falls and car accident.

98.     Carole was directly and proximately injured by AXA and DMS's breaches.

99.     Carole has suffered damages in an amount in excess of Twenty Five Thousand Dollars ($25,000).

WHEREFORE, Plaintiff Leslie Carole Burkemper requests that this Court enter judgment in her favor and against Defendants AXA and DMS; award Carole disability benefits for the duration of her life; or alternatively award Carole the present value of disability benefits over a period of her remaining life expectancy; award Carole her costs and attorneys' fees; and for such other and further relief as the Court deems just and proper.

## COUNT IV – NEGLIGENCE
### (John Doe)

100.    Plaintiff hereby restates and incorporates by reference all of the foregoing allegations and facts as if fully set forth herein.

101.    John Doe was at all times relevant herein an insurance broker.

102.    John Doe, as an insurance broker, sold the Policy to Carole.

13

**Pleadings in state court**                                    **Exhibit A**

103.    John Doe owed a duty to Carole to act with reasonable care, skill and diligence in procuring the insurance requested by Carole.

104.    John Doe was negligent because he breached his duty owed to Carole by failing to procure the insurance requested by Carole.

105.    John Doe was further negligent by procuring insurance that would not provide the coverage Carole requested.

106.    John Doe was further negligent be failing to inform Carole that the delivered Policy was not the policy that Carole requested.

107.    Because of John Doe's negligence, Carole was unable to make a knowledgeable decision whether to accept the Policy or pursue other insurance.

108.    Carole was directly and proximately injured by John Doe's breaches.

109.    Carole has suffered damages in an amount in excess of Twenty Five Thousand Dollars ($25,000).

WHEREFORE, Plaintiff Leslie Carole Burkemper requests that this Court enter judgment in her favor and against Defendant John Doe; award Carole disability benefits for the duration of her life; or alternatively award Carole the present value of disability benefits over a period of her remaining life expectancy; award Carole her costs and attorneys' fees; and for such other and further relief as the Court deems just and proper.

## COUNT V – VEXATIOUS REFUSAL TO PAY
### (AXA)

110.    Plaintiff hereby restates and incorporates by reference all of the foregoing allegations and facts as if fully set forth herein.

111.    AXA issued the Policy to Carole.

14

**Pleadings in state court**                                    **Exhibit A**

112.    Carole has suffered Injuries as defined by the Policy which, on their own and independent of any other cause, have caused Carole to be Totally Disabled due to Injury per the terms of the Policy.

113.    Carole is unable due to the severe and debilitating pain caused by her injuries resulting from her two falls and car accident to engage in the substantial and material duties of her regular occupation.

114.    Carole's inability to engage in the substantial and material duties of her regular occupation due to her injuries was not caused by her chronic severe genetic depression with suicidal ideations.

115.    Carole's inability to engage in the substantial and material duties of her regular occupation due to her injuries was not contributed to by her chronic severe genetic depression with suicidal ideations.

116.    Carole informed AXA's third-party administrator, DMS, of her injuries.

117.    Upon information and belief, DMS did not tell Carole to submit a claim because she was already receiving Total Disability benefits and, at this time, DMS had represented to Carole that the Total Disability benefits she was receiving would continue for her life.

118.    After AXA and DMS wrongfully retracted its determination that Carole was receiving lifetime benefits, Carole submitted the appropriate documentation to DMS regarding her injuries from her two falls and car accident.

119.    AXA wrongfully denied Carole's claim for Accident Total Disability benefits.

120.    AXA and DMS's determination that Carole would receive Total Disability benefits for her entire lifetime was correct because Carole was Totally Disabled due to an Injury per the terms of the Policy.

**Pleadings in state court**                                            **Exhibit A**

121.    AXA and DMS were aware of Carole's injuries that rendered her Totally Disabled due to an Injury per the terms of the Policy.

122.    AXA and DMS refused to properly review Carole's supporting documentation for her injuries.

123.    AXA and DMS would benefit in an amount of approximately Three Hundred Twenty Six Thousand Three Hundred and Eighteen Dollars and Forty Cents ($326,318.40) if they do not have to continue paying disability benefits to Carole.

124.    AXA and DMS's conduct as described herein has exacerbated Carole's mental health condition and caused tremendous anxiety and stress to Carole.

125.    AXA and DMS were aware of Carole's chronic severe genetic depression with suicidal ideations and are aware of Carole's anxiety and stress resulting from the denial of her claim.

126.    AXA and DMS are aware that Carole's condition makes her think about committing suicide and, upon information and belief, AXA and DMS are aware that the anxiety and stress from losing her disability benefits worsens Carole's condition.

127.    Because Caucasian females tend to live longer, AXA and DMS have an incentive for denying Carole's claim for disability benefits.

128.    AXA and DMS also have an incentive to deny Carole's claim because, if she commits suicide, then AXA and DMS will not have to continue paying her under the Policy.

129.    AXA's refusal to pay the loss is willful and without reasonable cause or excuse.

130.    Carole is entitled to damages for breach of the Policy, and penalties and fees are warranted due to AXA's vexatious and recalcitrant claim handling, as established in V.A.M.S. § 375.420.

**Pleadings in state court**                                    **Exhibit A**

131.    Based on the foregoing, Carole is entitled to recover additional damages from AXA in the amount of twenty percent (20%) of the first One Thousand, Five Hundred Dollars ($1,500) and ten percent (10%) of the remaining amount due and owing, plus reasonable costs and attorney's fees.

WHEREFORE, Plaintiff Leslie Carole Burkemper requests that this Court enter judgment in her favor and against Defendants AXA and DMS; award Carole disability benefits for the duration of her life; or alternatively award Carole the present value of disability benefits over a period of her remaining life expectancy; award Carole her costs and attorneys' fees; and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

FRANKEL, RUBIN, KLEIN,
SIEGEL, PAYNE & PUDLOWSKI, P.C.


By:    /s/Mary E. Parato
        MICHAEL J. PAYNE, #51967
        MARY E. PARATO, #71118
        mpayne@frankelrubin.com
        mparato@frankelrubin.com
        Attorneys for Plaintiff
        231 South Bemiston Avenue, Suite 1111
        Clayton, Missouri 63105
        Telephone:  (314) 725-8000
        Facsimile:  (314) 726-5837

17

**Pleadings in state court**                                        **Exhibit A**

**1922-CC11491**

| | |
|---|---|
| *POLICY NUMBER* | 87  712  546 |
| *THE INSURED* | MRS LESLIE C BURKEMPER |
| *EFFECTIVE DATE* | AUG 27, 1987 |
| *MONTHLY INCOME* | $2,666.00 |

**OUT OF FORCE**

*DISABILITY*

*INCOME*



# THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, New York, New York

We will pay benefits that this policy provides for loss that results from injury or sickness. Injury and sickness are defined on page 5. This agreement is subject to the exceptions and other provisions of this policy.

### NON-CANCELLABLE AND GUARANTEED RENEWABLE TO AGE 65

This policy cannot be cancelled by us before your 65th birthday. If you pay the premium in accordance with policy provisions, it will continue in force until the first policy anniversary on or after your 65th birthday. Before then and while the policy is in force, we cannot increase the premium.

### NOTICE OF 10 DAY RIGHT TO EXAMINE POLICY

Within 10 days after you receive this policy, you may return it to us or to the agent through whom you bought it and request that it be cancelled. That request and return will void the policy from the beginning. We will then refund any premium paid.

The provisions on the following pages are a part of this contract.

This is a participating policy.

*Pauline Sherman*

Senior Vice President, Secretary and
Associate General Counsel

President and Chief Executive Officer

DI 127

**Pleadings in state court**

**Exhibit A**

# OUT OF FORCE

We thank you for buying your new policy from The Equitable. Please take a
few minutes to read it. After reading it, if you have any questions, please
contact us or your agent. We are ready to assist you in all insurance matters.

## *TABLE OF CONTENTS*

|  | *Page* |
|---|---|
| Renewal | 1 |
| Ten-day Right to Examine Policy | 1 |
| Definitions | 5 |
| Benefit Provisions | 6 |
| Concurrent and Recurrent Disabilities | 6 |
| Premium Waived or Refunded | 6 |
| Pre-Existing Conditions Exclusion | 7 |
| Exceptions | 7 |
| Renewal Beyond Age 65 | 7 |
| General Provisions | 8 |
| Grace Period | 8 |
| Reinstatement | 8 |

### IMPORTANT NOTICE

This policy is a legal contract between you and The Equitable Life Assurance
Society of the United States. PLEASE READ YOUR POLICY CAREFULLY.

| THE INSURED | LESLIE C BURKEMPER | AUG 27, 1987 | EFFECTIVE DATE |
| | | SLS | |
| MONTHLY INCOME FOR TOTAL DISABILITY | $2,666.00 | PN 87-712 546 | POLICY NUMBER |
| | | 37 F | ISSUE AGE & SEX |

ELIMINATION PERIOD - 90 DAYS

**OUT OF FORCE**

MAXIMUM BENEFIT PERIOD
    FOR ACCIDENT TOTAL DISABILITY   - LIFETIME OF INSURED
    FOR SICKNESS TOTAL DISABILITY
        COMMENCING BEFORE AGE 60   - TO AGE 70
        COMMENCING AT AGE 60 OR LATER - TO AGE 65

### BENEFITS AND PREMIUMS TABLE

| BENEFITS | ANNUAL PREMIUM* | PREMIUM PERIOD |
|---|---|---|
| MONTHLY INCOME FOR TOTAL DISABILITY | $1,110.47 | TO AGE 65 |

FIRST PREMIUM DUE ON OR BEFORE DELIVERY OF POLICY

SUBSEQUENT PREMIUMS     $1,110.47 DUE AUG 27, 1988 AND EVERY 12 MONTHS
                           THEREAFTER DURING PREMIUM PERIOD

NOTE: THIS DECLARATION PAGE REFLECTS YOUR COVERAGE AS OF MAY  2, 2018
AND MAY NOT ACCURATELY REFLECT YOUR COVERAGE AT TIMES PRIOR TO THIS DATE.

DATE OF ISSUE    MAY  2, 2018

127-3-707 SERIES 127    DIL65    PAGE THREE  NSD*  2018-05-02  2018-05-02 0957

**Pleadings in state court**                    **Exhibit A**

*ENDORSEMENT*



Endorsed on this Policy as of its Date of Issue:

## NOTICE CONCERNING COVERAGE LIMITATIONS AND EXCLUSIONS UNDER THE LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION ACT

Residents of this state who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the Missouri Life and Health Insurance Guaranty Association. The purpose of this association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the guaranty association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the guaranty association is not unlimited, however. And, as noted below, this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

The Missouri Life and Health Insurance Guaranty Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in Missouri. You should not rely on coverage by the Missouri Life and Health Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy. Coverage is NOT provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus. Insurance companies or their agents are required by law to give or send you this notice. However, insurance companies and their agents are prohibited by law from using the existence of the guaranty association to induce you to purchase any kind of insurance policy. **YOU MAY CONTACT EITHER THE ASSOCIATION OR THE MISSOURI DEPARTMENT OF INSURANCE AT THE FOLLOWING ADDRESSES SHOULD YOU HAVE ANY QUESTIONS REGARDING THIS NOTICE.**

The Missouri Life and Health Insurance Guaranty Association

520 Dix Road, Suite D

Jefferson City, Missouri 65109

Missouri Department of Insurance

Post Office Box 690

Jefferson City, Missouri 65102-0690

The state law that provides for this safety-net coverage is called the Missouri Life and Health Insurance Guaranty Association Act. On the back of this page is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations under the act or the rights or obligations of the guaranty association.

## THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES

*Pauline Sherman*

Pauline Sherman
Senior Vice President, Secretary and
Associate General Counsel

Christopher M. Condron
President and Chief Executive Officer

(please turn to back of page)

# OUT OF FORCE

Generally, persons will be covered if they live in this state, and hold a life or health insurance contract or annuity, or a certificate under a group policy or contract. However, not all individuals with a right to recover under life or health insurance policies or annuities are protected by the Act.

A person is not protected when -

1. The person is eligible for protection under the laws of another state;

2. The person purchased the insurance from a company that was not authorized to do business in this state;

3. The policy is issued by an organization which is not a member insurer of the association; or

4. the person does not live in this state, except under limited circumstances.

Additionally, the Association may not provide coverage for the entire amount a person expects to receive from the policy. The Association does not provide coverage for any portion of the policy where the person has assumed the risk, for any policy of reinsurance (unless an assumption certificate was issued), for interest rates that exceed a specified average rate, for employers' plans that are self-funded, for parts of plans that provide dividends or credits in connection with the administration of policy, or for unallocated annuity contracts (which are generally issued to pension plan trustees).

The Act also limits the amount the Association is obligated to pay persons on various policies. The Associaton does not pay more than the amount of the contractual obligation of the insurance company. The Association does not have to pay more than three hundred thousand dollars ($300,000) in death benefits for any one life regardless of the number of policies that insure that life. The Association does not have to pay amounts over one hundred thousand dollars ($100,000) in cash surrender or withdrawal benefits on one life regardless of the number of policies insuring that individual. For health insurance benefits, the Association is not obligated to pay over one hundred thousand dollars (100,000) including net cash surrender and withdrawal benefits. On an annuity contract, the Association is not liable for over one hundred thousand dollars ($100,000) in present value. Finally, the Association is never obligated to pay more than a total of three hundred thousand dollars ($300,000) for any one insured for any combination of insurance benefits.

THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES

# OUT OF FORCE

*Endorsed on this policy on its date of issue:*

A) If Page 7A is part of this policy, this rider changes item (2) of the policy's Exceptions provision to:

(2) suicide or attempted suicide while sane; intentionally self-inflicted injury;

B) If rider DI 86-73 is part of this policy, this rider changes item 5 of the Exceptions provision of that rider to:

5. bacterial infection other than that stemming from an accidental bodily injury;


*Pauline Sherman*

Senior Vice President, Secretary and
Associate General Counsel

President and Chief Executive Officer

DI 86-32

**Pleadings in state court**                                    **Exhibit A**

# *Definitions* OUT OF FORCE



In this policy:

**YOU, YOUR,** and **YOURSELF** mean the insured.

**WE, OUR,** and **Us** mean The Equitable Life Assurance Society of the United States.

**INJURY** means your accidental bodily injury which occurs while this policy is in force.

**SICKNESS** means your sickness or disease which is first diagnosed or treated while this policy is in force.

**LOSS** means disabled, except when stated as loss of life, loss of limb, or other similar expression.

**DISABLED** or **DISABILITY** means Total Disability.

**YOUR REGULAR OCCUPATION** means the occupation (or occupations, if more than one) in which you are regularly engaged for gain or profit at the time you become disabled.

**TOTAL DISABILITY** means your inability due to injury or sickness to engage in the substantial and material duties of your regular occupation. But after such disability has lasted continuously for 120 months past the end of the Elimination Period, it will then mean your inability to engage in the substantial and material duties of any occupation for which your education, training, or experience reasonably qualifies you. It will not be considered to exist for any time you are not under the regular care and attendance of a doctor.

**PRESUMPTIVE TOTAL DISABILITY** means the entire and irrecoverable loss, occurring while this policy is in force, of: (1) sight; or (2) the use of both hands; or (3) the use of both feet; or (4) the use of one hand and one foot; or (5) speech; or (6) hearing. It will be presumed to be disability even if you engage in any occupation.

In the case of such a loss, you don't have to be under the regular care and attendance of a doctor. We will waive the elimination period.

**ACCIDENT TOTAL DISABILITY** means disability caused by injury.

**SICKNESS TOTAL DISABILITY** means disability caused or contributed to by sickness or by any of the following:

(1) hernia;

(2) bodily or mental infirmity;

(3) bacterial infection other than that stemming from injury;

(4) pregnancy or complication of pregnancy;

(5) medical or surgical treatment of any of (1) through (4) above or of any sickness or disease.

Disability caused or contributed to by any of (1) through (5) above is not accident total disability.

**ELIMINATION PERIOD** means the number of days at the beginning of a period of continuous disability for which benefits are not payable. Successive period of disability may be used to satisfy the Elimination Period, subject to the criteria set forth under "Recurrent Disability" on page 6.

**MONTHLY INCOME** refers to the amount of that income shown on page 3.

**MAXIMUM BENEFIT PERIOD** refers to the length of time shown for that period on page 3.

**EFFECTIVE DATE** refers to the effective date shown on page 3.

**AGE** means the first policy anniversary on or after the birthday on which you attain the specified year of age.

**DOCTOR** means a legally qualified physician other than yourself.

**Pleadings in state court**                                          **Exhibit A**

# *Benefit Provisions* OUT OF FORCE

**TOTAL DISABILITY INCOME.** If disability: (1) starts while this policy is in force; and (2) continues beyond the Elimination Period; we will pay the Monthly Income for each month of the period of disability that extends beyond the Elimination Period. If any portion of such period is less than a full month, we will pay 1/30 of the Monthly Income for each day of it. We will not pay Monthly Income for longer than the Maximum Benefit Period even if your continuous period of disability is due to: (1) more than one injury; or (2) more than one sickness; or (3) injury and sickness.

**CONCURRENT DISABILITIES.** We will pay only a single Monthly Income amount for each month of disability when caused or contributed to by: (1) both injury and sickness; or (2) more than one injury; or (3) more than one sickness.

**RECURRENT DISABILITIES.** Successive periods of total disability or residual disability (if residual disability coverage is provided in this policy) will be considered one continuous period if: (1) they occur while this policy is in force; and (2) they result from the same or related causes; and (3) such periods were not separated by 6 months or more.

Otherwise, they will be considered separate periods of disability.

**REHABILITATION.** If while disabled you take part in physical or occupational rehabilitative training designed to enable you to return to work in you regular occupation, we will pay for it if we approve it. For a continuous period of disability, we will pay the actual charges for the training up to a maximum of six times the Monthly Income shown on page 3. Taking part in such training will not in itself be deemed recovery from disability. For your protection you should notify us in advance of any proposed training.

**BENEFITS BEYOND AGE 65.** We will pay Monthly Income for a limited time beyond age 65 if: (1) benefits for total disability or residual disability (if residual disability coverage is provided in this policy) would otherwise stop at age 65; (2) the disability continues past age 65; and (3) less than 12 months of payments have been made for that disability. We will continue the payments until the earlier of: (1) the end of the disability; or (2) 12 months of payments have been made for that disability.

**TRANSITION BENEFIT.** If you die while disabled and receiving a monthly benefit for Total or Residual Disability and are survived by your spouse, we will pay this policy's Monthly Income (including Cost of Living Adjustment if applicable) for a limited time to that spouse. If there is no surviving spouse, we will make such payment, equally divided, to all surviving dependent children for a limited time. The payment must have existed for at least 12 consecutive months or to the end of the Elimination Period, if longer. Such payments will end on the earliest of the following events: (1) when 6 monthly payments have been made; or (2) the Maximum Benefit Period ends; or (3) the death of all who are eligible to receive payment under this provision.

**PREMIUM REFUND AT DEATH.** If you die while this policy is in force, we will refund any unearned portion of the premium paid. At our option, we will pay it to: (1) your spouse; or (2) your estate; or (3) any person who may be entitled to it.

Any payment made by us in good faith will discharge us to the extent of such payment.

**WAIVER OF PREMIUM.** If your disability starts while this policy is in force and continues for 90 days, we will refund any premiums which were due and paid during that period. Successive periods of disability may be used to satisfy this 90 day period, subject to the criteria set forth under "Recurrent Disabilities" on this page. We will then waive all premiums which come due while the disability continues. The premium to be waived will be based upon the mode of payment in effect when the disability began. If disability ends before age 65, you can resume premium payment on the next due date after the end of your disability. The payment will be at the rate in effect at the start of you disability.

**TRANSPLANT.** If you become disabled as a result of a transplant of a part of your body to that of someone else, it will be considered to be Sickness Total Disability. The Monthly Income will be payable accordingly.

**Pleadings in state court**                    **Exhibit A**

## BENEFIT PROVISIONS (Continued)

OUT OF FORCE

**MILITARY SERVICE.** If you go into the service for no more than two months in a row, for training purposes only, your coverage will go on for that time if you pay the premiums as they fall due. If you enter the service on a full time basis, your coverage will go on for up to the first five years of such service if you pay the premiums as they fall due. However, benefits will not be payable for a disability which results from or is contributed to by duties preformed in such service. If your service goes on for more than five years your coverage will be suspended as of the end of the fifth year. You may suspend it sooner if you wish to do so by: (1) within 31 days after joining the service asking us in writing to suspend your policy as of the date you entered the service; or (2) after 31 days of service asking us in writing to suspend your policy as of the date of your request.

The policy will not be in force while it is in suspension. We will refund any premium you paid for coverage during the period of suspension. When you leave the service you may reinstate your policy without evidence of insurability if you: (1) make written request to us within 60 days after leaving the service; and (2) pay the pro rata premium from the end of suspension to the next premium due date.

The premium will be at the same rates as would have been payable if the policy had not been suspended. We will not cover any loss from injury which occurred or sickness that was first diagnosed or treated while the policy was suspended.

## *Pre-Existing Conditions Exclusion*

This policy does not cover any loss which is caused or contributed to by a pre-existing condition. This is subject to the second paragraph of Incontestability on page 8. A pre-existing condition is an injury that occurred or a sickness that was diagnosed or treated within the two years before the effective date of this policy.

A condition that is disclosed on the application for this policy and which is not excluded from coverage by name or specific description is not a pre-existing condition. It will be covered as of the effective date of this policy.

## *Exceptions*

This policy does not cover any loss which is caused or contributed to by any of the following:

(1) a pre-existing condition, as defined above;

(2) declared or undeclared war. War includes armed aggression resisted by the military forces of any country, combination of countries or international organization.

## *Renewal Beyond Age 65*

You may continue this policy past age 65. However, the following conditions apply:

(1) You must be working full time for gain or profit at your regular occupation at age 65.

(2) We may ask for proof that you are working full time while the policy continues in force past age 65. This policy will terminate on the date you cease to be so employed full time (except by reason of disability). However, coverage will continue to the end of any period for which we have accepted a premium.

(3) Optional benefits included in this policy are not renewable at or after age 65.

(4) The maximum benefit period for disability beginning at or after age 65 is 24 months.

(5) The Transition Benefit on page 6 will not be renewed at or after age 65.

(6) The premiums due at or after age 65 will be based on our rates then in effect for your attained age. We can change the rates at any time. No change will be made unless it applies to all policies of the same class.

(7) We will not waive or refund premiums if you become disabled at or after age 65.

DI 127                                 Page 7

**Pleadings in state court**                                              **Exhibit A**

*General Provisions* OUT OF FORCE

**CONSIDERATION AND PAYMENT OF PREMIUMS.** We provide this insurance in exchange for payment of the required premium and the application for this policy. A copy of the application is attached to and becomes part of this policy on the date of issue.

Premiums are payable on their due date. They are payable at our Home Office or any of our premium collection offices. Premiums are due for the Premium Period shown on page 3 or until your death if it comes first. The Premium Period starts on the Effective Date. You may ask us in writing to change the frequency of premium payment. If we approve the change, the premium will be at the rate set by us for this policy. Approval of such a change will be subject to our minimum premium rules then in effect. If the request applies to the first premium, the request must be made at the time that premium is paid. If you fail to pay a premium by its due date the policy will terminate as of that date, except as set forth in Grace Period on this page.

If we accept a premium for a period of coverage starting on or after your age 65, coverage will continue until the end of the period for which the premium was accepted, except as set forth in Misstatement of Age on Page 9.

**ENTIRE CONTRACT: CHANGES.** This policy, with the application and attached papers, is the entire contract. No change in this policy will be effective until approved by our president or one of our vice presidents. This approval must be noted on or attached to this policy. No Agent may change this policy or waive any of its provisions. No Agent has the authority to accept on our behalf any premium other than the first.

**INCONTESTABILITY.** After this policy has been in force during your lifetime for two years from its Effective Date we cannot contest it for misstatements in the application. We cannot contest any policy change that requires evidence of insurability, or any reinstatement of this policy, after the change or reinstatement has been in effect for two years during your lifetime. The two years will not include any period during which you are totally, partially, or residually disabled.

No claim for loss incurred or disability that starts after two years from the Effective Date will be reduced or denied on the grounds that a sickness or physical condition existed prior to the Effective Date. This will not apply if such sickness or condition was excluded from coverage by name or specific description on the date of loss.

**POLICY CHANGES.** You may change this policy to another plan of disability income insurance; however, we must consent to the change.

**ASSIGNMENTS.** You may assign this policy. We will not be bound by any assignment you make, nor will it be deemed to be in force, as to us, until it has been filed in writing at our Home Office. We assume no responsibility for the validity of an assignment.

**GRACE PERIOD.** This policy has a 31 day grace period. This means that if a premium after the first one is not paid by the date it is due, it may be paid during the 31 days that follow. During the grace period the policy will stay in force.

**REINSTATEMENT.** If any premium after the first one is not paid before the grace period ends, then this policy will lapse. Later acceptance of premium by us without requiring an application for reinstatement will reinstate this policy.

If we require an application, we will give a conditional receipt for the premium tendered. If the application is approved, the policy will be reinstated. Lacking such approval, the policy will be reinstated on the 45th day after the date of the conditional receipt unless we have previously written you of its disapproval.

The reinstated policy will not cover any loss that results from injury sustained or sickness diagnosed or treated before the date of reinstatement. In all other respects your and our rights will remain the same, subject to any provisions noted on or attached to the reinstated policy.

**NOTICE OF CLAIM.** Written notice of claim must be given within 30 days after a covered loss starts or as soon as reasonably possible. This notice can be given to us at our Home Office or to one of our Agents. Notice should include your name and policy number.

**Pleadings in state court**                                      **Exhibit A**

## GENERAL PROVISIONS (Continued)

**CLAIM FORMS.** When we receive your notice of claim, we will send you forms for filing proof of loss. If these forms are not given to you within 15 days, you can meet the proof of loss requirements by giving us a written statement of the nature and extent of your loss within the time limit stated in Proof of Loss on this page.

**PROOF OF LOSS.** If the policy provides for periodic payment for a continuing loss, written proof of loss satisfactory to us must be given within 90 days of the end of each monthly period for which we are liable. For any other loss, such proof must be given within 90 days of that loss.

If it is not reasonably possible to give proof in the time required, we will not reduce or deny the claim for this reason if the proof is filed as soon as reasonably possible. But in no event shall the Equitable be liable for any period more than one year prior to the date proof is given; unless you are legally incapacitated.

Written proof of loss must be furnished to the Equitable at its Home Office.

**TIME OF PAYMENT OF CLAIMS.** After receiving written proof of loss, we will pay monthly all benefits then due you for disability. Any balance that remains unpaid when our liability ends will be paid at that time. Benefits for any other loss covered by this policy will be paid as soon as we receive proper written proof.

**PAYMENT OF CLAIMS.** Benefits will be paid to you. Any loss of life benefits are payable in accordance with the beneficiary designation in effect at the time of payment. If none is then in effect, the benefits will be paid to your estate. Any other benefits unpaid at death may be paid at our option either to your beneficiary or to your estate.

If benefits are payable to your estate or to a beneficiary who cannot execute a valid release, we may pay benefits up to $1,000 to someone related to you or your beneficiary by blood or marriage whom we consider to be entitled to the benefits. We will be discharged to the extent of any such payment made in good faith.

**UNPAID PREMIUM.** When a claim is paid, any premium due and unpaid may be deducted from the claim payment.

**PHYSICAL EXAMINATIONS.** We have the right to have you examined, at our expense, as often as reasonably necessary while a claim is pending.

**LEGAL ACTION.** No legal action may be brought to recover on this policy within 60 days after written proof of loss has been given as required by this policy. No such action may be brought after 3 years from the time written proof of loss is required to be given.

**MISSTATEMENT OF AGE.** If your age has been misstated, the benefits of the policy will be those that the premium would have purchased at the correct age. If, based upon your correct age, the policy would not have provided coverage, our liability will be limited to refund of premiums for the period not covered.

**DIVIDENDS.** We will determine annually your policy's share, if any, of our divisible surplus. It will be payable as a dividend at the end of each policy year if the policy is then in effect with all premiums paid up to date.

**POLICY YEARS AND ANNIVERSARIES.** The first policy year begins on the Effective Date. All other policy years begin on the anniversary of the Effective Date. These anniversaries are the policy anniversaries.

**CONFORMITY WITH STATE STATUTES.** Any provision of this policy which, on its Effective Date, is in conflict with the laws of the state in which you reside on that date is amended to conform to the minimum requirements of such laws.

DI 127                                    Page 9

OUT OF FORCE

---

# THE EQUITABLE LIFE ASSURANCE SOCIETY
## OF THE UNITED STATES

787 7TH AVENUE, NEW YORK, NEW YORK 10019

*DISABILITY INCOME POLICY*

DI 127

---

**Pleadings in state court**                                    **Exhibit A**



# OUT OF FORCE

**AXA EQUITABLE LIFE INSURANCE COMPANY**

## NAME CHANGE ENDORSEMENT

**Effective Date:  September 7, 2004**

This endorsement is made part of the policy, contract or certificate as of its Effective Date. It should be attached to and kept with the policy, contract or certificate.

Wherever the name of The Equitable Life Assurance Society of the United States or the Equitable appears in the policy, contract or certificate, the name AXA Equitable Life Insurance Company is hereby substituted.

In all other respects, the terms and provisions of the policy, contract or certificate remain unchanged and in full force and effect.

Christopher M. Condron
Chairman, President and
Chief Executive Officer

Pauline Sherman
Senior Vice President,
Secretary and Associate
General Counsel

2003AXA-ELAS
**Pleadings in state court**

1290 Avenue of the Americas,
New York, New York 10104
**Exhibit A**

**Request To The Equitable Life Assurance Society of the United States**

FOR   ☒ CHANGE (as specified in Section I) OF POLICY OR CONTRACT NO. 87 712 546

☐ REINSTATEMENT ☐ DELIVERY   OF POLICY OR CONTRACT NO. _____

SECTION I

REISSUE WITH REGISTRAR DATE EQUAL TO ISSUE DATE OF

August 27, 1987.

**OUT OF FORCE**

It is hereby agreed by the undersigned that:

1. If evidence of insurability is required in connection with this request, the statements and answers to the questions

   ☐ in Sections II and III on the reverse side of this form

   ☐ in Section II on the reverse side of this form and on the medical history form dated _____

   are reaffirmed and offered as part of this request.

   Such statements and answers are true and complete to the best of my knowledge and are made to induce the Equitable to approve this request.

2. The Equitable shall incur no liability under this request
   (a) until it has been approved by the Equitable and the full consideration required in connection therewith has been paid; and
   (b) if evidence of insurability is required by the Equitable in connection with this request, unless the statements and answers which are made part of this

request and offered as evidence of insurability are, without material change, true and complete to the best of my knowledge as of the time of payment of such consideration.

3. Any new policy or contract issued in connection with a change request shall be subject to any assignment of the original policy or contract in force and on file with the Equitable at its Home Office and to any loan or advance made by the Equitable on the security of the original policy or contract and to the rights of the Equitable in connection therewith.

4. A reinstated disability income or medical expense policy will cover only injuries sustained or sickness contracted on or after the date of reinstatement.

5. No agent or medical examiner has authority to make or modify any contract or to waive any of the Equitable's rights or requirements and the Equitable shall not be bound by any knowledge or information of an agent or medical examiner unless it is set forth in this form or in any other form submitted in connection with this request.

Dated at _____ on _____ 19___   X _Leslie Carell Buchanan_

Agency _____

Agent _____   Signature(s)

**SIGNATURE REQUIREMENTS**

*Change.* The signature of the Owner (and the assignee, if policy is assigned) is required. If evidence of insurability is required and the insured is not the Owner of the policy, the Insured must also sign.

*Reinstatement.* The signature of the insured is required. If Insured is not the Owner or if the policy or contract is absolutely assigned, the Owner or Absolute Assignee must also sign.

*Delivery.* Same signature requirements as on original application.

*NOTE: If Owner or Insured is under age 15, the signature of the parent, guardian or Purchaser, as appropriate, should be secured instead. If Supplemental Protective Benefit or Purchaser Benefit is included, the Applicant or Purchaser, as appropriate, should also sign.*

180—333A

**Pleadings in state court**                                                 **Exhibit A**

# AMENDMENT TO APPLICATION

| | |
|---|---|
| Name of Proposed Insured | LESLIE CAROCE BURKEMPER |
| | Application Dated JUN 19, 1987 |
| Policy No. | PN87 712 546 |

**OUT OF FORCE**

## TO THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES

This application is hereby amended by the undersigned in the following particulars:

With answer to Question #4b on Part 1 of DI-85APP amended to read "Occupational class AAA - Plan L65".

With answer to Question #8a1 on Part 1 of DI-85APP amended to read "None".

This amendment is to be taken as a part of said application, subject to the agreement therein contained; said application and this amendment thus taken as a whole are to be considered as the basis for and as a part of the policy or contract. To the best of my knowledge and belief, in all other respects the statements and answers in the application continue to be, without material change, true and complete as of the date of this amendment.

Dated at ___ST. PETERS___ ___Mo___ on ___9-23___ 19 __87__
(City)            (State)

X _Leslie Carole Burkemper_
Signature of Applicant

| |
|---|
| Agent: |
| Agency: |

180-237E App. Amendment.

**Pleadings in state court**                    **Exhibit A**

# OUT OF FORCE

| THE INSURED | LESLIE CAROLE BURKEMPER | AUG 27, 1987 | EFFECTIVE DATE |
| --- | --- | --- | --- |
| | | SLS | |
| MONTHLY INCOME | $2,666.00 | PN 87 712 546 | POLICY NUMBER |
| FOR | | | |
| TOTAL DISABILITY | | 37 F | ISSUE AGE & SEX |

ELIMINATION PERIOD — 90 DAYS

MAXIMUM BENEFIT PERIOD
    FOR ACCIDENT TOTAL DISABILITY    — LIFETIME OF INSURED
    FOR SICKNESS TOTAL DISABILITY
        COMMENCING BEFORE AGE 60    — TO AGE 70
        COMMENCING AT AGE 60 OR LATER — TO AGE 65

BENEFITS AND PREMIUMS TABLE

| BENEFITS | MONTHLY PREMIUM* | PREMIUM PERIOD |
| --- | --- | --- |
| MONTHLY INCOME FOR TOTAL DISABILITY | $94.40 | TO AGE 65 |
| FIRST PREMIUM | $94.40 DUE ON OR BEFORE DELIVERY OF POLICY | |
| SUBSEQUENT PREMIUMS | $94.40 DUE SEP 27, 1987 AND MONTHLY THEREAFTER DURING PREMIUM PERIOD | |

OCT 22 1987



DATE OF ISSUE    OCT 15, 1987

127-3-707    SERIES 127    DIL65    PAGE THREE    NSD*    87-10-15    87-10-15 1615

**APPLICATION PART I FOR NON-CANCELLABLE DISABILITY INSURANCE TO**

**THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES NEW YORK, N.Y.**

OUT OF FORCE

## 1. PROPOSED INSURED

a. Print name as it is to appear on the policy:
LESLIE CAROLE BURKEMPER

b. ☐ Mr. ☐ Miss ☐ Doctor
☒ Mrs. ☐ Ms. ☐ Other Title

c. ☐ Male
☒ Female

d. Birth date Month/Day/Year
Redacted

e. Age nearest birthday
37

f. Birthplace (state)
MISSOURI

g. Citizenship (if other than U.S., give full details under Section 11) (country)
U.S.

h. Social Security or Tax Number
Redacted

i. Residence Address: Street, Apt. #
RR 1 BOX 1269

City, State, Zip
FOLEY, MO 63347

## 2. OCCUPATION

a. List all current occupations and job titles:

PRESIDENT / OWNER; GREAT RIVERS HOME CARE.

b. Duties (describe fully, including time spent away from office, manual work, etc. If travel, type of travel: auto, commercial airline, etc.)

PRESIDENT AND OWNER; IN-HOME HEALTH CARE 40% OUT OF OFFICE

c. Nature of Business(es) HOME HEALTH CARE

d. Type of organization:
☐ Private Corporation ☒ Closely Held Corporation
☐ Sole Proprietorship ☐ Professional Corporation
☐ Partnership ☐ Other

e. Name of Employer
GREAT RIVERS HOME CARE, INC.

f. Business Address: Street, No.
4308 N. SERVICE ROAD

City, State, Zip
ST. PETERS, MO. 63376

g. Previous Occupations, if any within the last two years
HOME HEALTH CARE
ADMINISTRATOR RN.

h. Are you now working on a full-time basis?
☒ Yes ☐ No

i. Do you intend to change your occupation within the next year?
☐ Yes ☒ No

## 3. EARNINGS

Show annual salary, commissions, fees, bonuses, overtime, and share of profits received regularly, and explain in "Details" Section. Also explain any significant changes in earnings. If self-employed or a member of a partnership, enter your gross earnings reduced by your regular business expenses incurred in producing this income. Exclude fringe benefits, perks, pension funds, and profit sharing plans.

| a. Source of your earned income: | Current Annual Rate | Actual Prior Calendar Year |
|---|---|---|
| 1. your current primary occupation? | $ 40,000.⁰⁰ | $ |
| 2. any other occupations? | $ | $ |

b. What contributions are made on your behalf to pension funds or profit sharing plans which will not continue in the event of disability?
$ — $ —

c. What is your net unearned income (from investments, rents, dividends, royalties, pensions, etc.)?
$ — $ —

d. What part of your earned income would continue during disability? (show amount) For how long?
$ — ___ months

e. Does your total net worth exceed $2,000,000? (Omit personal residence) ☐ Yes ☒ No
(If "Yes", give details below. Amounts rounded to the nearest $10,000 are acceptable.)
JB 6-9-87

### CURRENT NET WORTH

| | |
|---|---|
| Cash, Savings Stocks & Bonds | $ 225,000 |
| Real Estate (omit personal residence) | $ 175,000 |
| Business Interest(s) | $ 25,000 |
| Value of Vested Pension Fund or Profit Sharing Plan | $ — |
| Other | $ — |
| Total | $ 425,000.⁰⁰ |

## 4. DISABILITY INCOME INSURANCE APPLIED FOR

Note: Do not complete Sections 4 and 5 if Applicant is only applying for Overhead Expense.

a. Monthly Income Amount: $ 2666
(Include any amounts applied for under the Employer Paid Premium rider and check the appropriate box below in Optional Benefits)

b. Occupational class: SELECT Plan PL 65

c. Maximum Benefit period 65 accident 65 sickness

d. Elimination period: 90 days

§

## 5. OPTIONAL BENEFITS

Optional Benefits: (For applicable policies where available)

☐ Social Security Supplement           $_____ Monthly Benefit
☐ Supplemental Income                  $_____ Monthly Benefit
☐ Increased Protection                 $_____ Option Amount
☐ Cost of Living Adjustment
☐ Residual 65/W or; ☐ Partial Disability (choose one)
☐ Hospital Confinement
☐ Employer Paid Premium*               $_____ Monthly Benefit

*Do you understand and agree that your employer will pay 100% of the premium for this policy and that if your employer stops paying the premium, the Monthly Income will be reduced by the Employer Paid Premium benefit amount and the premium will be reduced accordingly?   ☐ Yes   ☐ No

Other Optional Benefits not listed:

_____

_____

## 6. OVERHEAD EXPENSE INSURANCE APPLIED FOR

Note: Do not complete Sections 6 and 7 if Applicant is only applying for Disability Income.

a. Monthly
   Benefit Amount:                     $_____

b. Maximum
   Benefit Period          accident               sickness

c. Elimination
   Period:                 days

d. Optional
   Benefits:

   ☐ Capital Account        $_____ Monthly Benefit
   ☐ Increased Protection   $_____ Option Amount
   ☐ Salary Replacement:    $_____ Monthly Benefit
                            _____ Benefit Period

   Other Optional Benefits not listed:

   _____

   _____

   _____

e. If other than sole owner,
   what is your share of the expenses?                    %

## 7. OVERHEAD EXPENSE SUMMARY

f. Are any of your overhead expenses
   incurred through joint occupancy?                ☐ Yes   ☐ No
   If yes, specify which expenses are
   incurred jointly and your percentage share.

_____

Note: Exclude salary, fees, drawing account profit or other remuneration for the Proposed Insured or a member of the proposed insured's profession or family, or for a person hired to perform the duties of the Proposed Insured; also exclude the cost of goods merchandise, supplies, or other products used in the conduct of the Proposed Insured's profession or occupation.

g. What are your actual monthly overhead expenses?
   (If a partner or joint occupant, include only your share of the expenses)

| | |
|---|---|
| Rent, taxes (other than on income) | $ |
| heat, water and other utilities | $ |
| employee's salaries | $ |
| equipment rental | $ |
| the greater of; the scheduled depreciation of or the mortgage principal payments for the building in which you run your business (but only if you own the building before the onset of disability) | $ |
| the greater of; the scheduled depreciation of or the loan principal payments for business equipment (but only if you own the equipment before the onset of disability); and | $ |
| other normal business expenses (Specify) | $ |
| | $ |
| | $ |
| | $ |
| Total of all listed expenses | $ |

## 8. OTHER INSURANCE

a. Describe all Disability Income and Overhead Expense coverage in force. Include disability benefits in life coverage, pension, union welfare, state disability, civil service, employer or employee benefit plans for franchise or association plans. If none, write "none."

| Company or Organization | Type of Coverage* | Policy # | Amount of Monthly Income | Maximum Benefit Period | | To Be Replaced | | Employer Funded | | Fully Offset By Social Security | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Acc | Sick | Yes | No | Yes | No | Yes | No |
| 1 | | | | | | | | | | | |
| 2 | | | | | | | | | | | |
| 3 | | | | | | | | | | | |
| 4 | | | | | | | | | | | |
| 5 | | | | | | | | | | | |

*Key  I—Individual          G—Group              A—Association
       E—Employer Sick Pay or Union   BOE—Business Overhead Expense

**Pleadings in state court**                              **Exhibit A**

2

# OUT OF FORCE

**8. OTHER INSURANCE (CONT'D)**

b. Does any of the above coverage (policy or rider) provide additional benefits if you do not qualify for Social Security or similar programs?  ☐Yes ☐No
  If yes, give the company and amount of such benefit:

c. Is the insurance applied for intended to replace any existing insurance?  ☐Yes ☐No
  If yes, indicate in 8a above if not already indicated

d. What is the next premium due date for insurance to be replaced?

e. How often are its premium payments due?

Questions f-i apply to life, disability income, overhead expense and health insurance.

f. Do you now have pending any application for such insurance?  ☐Yes ☒No

g. Do you intend to apply for any such insurance within the next six months?  ☐Yes ☒No

h. Have you ever had an application for such insurance, or for renewal or reinstatement of such insurance, declined, postponed, rated-up in premium or otherwise modified, or a policy rescinded? (State companies and full details)  ☐Yes ☐No

i. Have you ever applied for or received any type of income or premium waiver benefit or worker's compensation award as a result of disability? (State payer and cause)  ☐Yes ☐No

**9. ADDITIONAL INFORMATION**

Did you within the past year, or do you intend to:
a. Travel or reside outside the United States  ☐Yes ☒No
b. Engage in auto racing, motorcycle driving or racing, motorboat racing, snowmobile driving or racing, underwater diving, rodeo participation, parachuting, mountain climbing, stunt flying, acrobatics, or similar avocations? (If yes, complete avocation questionnaire.)  ☐Yes ☒No
c. Are you on notice to report for duty in the Armed Forces?  ☐Yes ☒No
d. Have you smoked cigarettes in the past 12 months?  ☐Yes ☒No

**10. PREMIUM PAYMENTS**
a. ☐Annual ☐Semi-Annual ☐System-Matic (attach form)
b. Salary Allotment Mode ☐Annual ☐Quarterly ☐Semi-Annual ☐Monthly
c. Send Premium Notice To: ☒Business ☐Residence

**11. DETAILS & SPECIAL INSTRUCTIONS:**

Enter question number and fill in details below.

**APPLICATION PART II**

OUT OF FORCE

(Complete only if application is on non-medical basis)

## 1. PROPOSED INSURED

a. Print name: First    Middle Initial    Last

LESLIE CAROLE BURKEMPER.

b. Height: 5 ft. 5 in. 140 c. Weight:

## 2.

a. Name and address of your personal physician: (If none, so state)

DR. THOMAS FRAWLEY.
14003 BAYWOOD VILLAGE DR.
ST. LOUIS, MO

b. Date and reason last consulted if within the last 5 years:

1-87 Physical

c. What treatment was given or recommended?

CONDITION NORMAL.

## 3.

Are you now under observation or taking treatment?   ☐Yes ☒No

## 4.

Have you ever been treated for or had any known indication of:
(Circle the applicable items)

a. Disease or disorder of eyes, ears, nose, throat or speech?   ☐Yes ☒No

b. Dizziness, fainting, convulsions; paralysis, stroke or nervous system disorder; emotional, psychological or mental disease or disorder?   ☐Yes ☒No

c. Shortness of breath; blood spitting; bronchitis, asthma, emphysema, tuberculosis or other respiratory disease or disorder?   ☐Yes ☒No

d. Chest pain, irregular pulse, varicose veins, high blood pressure, rheumatic fever, heart murmur, heart attack or other disease or disorder of the heart or blood vessels?   ☐Yes ☒No

e. Ulcer, hernia, colitis, intestinal bleeding, jaundice, hemorrhoids, or other disease or disorder of the stomach, intestines, liver or gallbladder?   ☐Yes ☒No

f. Sugar, albumin, blood or pus in urine; stone or other disease or disorder of the kidney, bladder, prostate or reproductive organs? Disorder of menstruation, pregnancy, caesarian section, uterus, ovaries or breasts, or are you now pregnant?   ☐Yes ☒No

g. Diabetes; cyst, tumor, or cancer, thyroid or glandular disorder; skin disease or disorder?   ☒Yes ☐No 1-87

h. Neuritis, arthritis, gout, or disease or disorder of the muscles or bones, including the back, neck, spine or joints?   ☐Yes ☒No

i. Allergies; anemia; other blood or lymphatic disease or disorder?   ☐Yes ☒No

## 5.

Have you within the last 10 years:

a. Used barbiturates, amphetamines, hallucinatory drugs, heroin, opiates or other narcotics except as prescribed by a physician (other than yourself if you are a physician)   ☐Yes ☒No

b. Received counseling or treatment regarding the use of alcohol or drugs?   ☐Yes ☒No

## 6.

Other than as stated in Questions 2, 3, 4, and 5, have you within the past 5 years:

a. Consulted or been examined or treated by any physician or practitioner, or visited a psychiatrist, psychologist, psychiatric social worker, psychotherapist or counselor for any reason?   ☒Yes ☐No

b. Had any illness, injury, or surgery?   ☒Yes ☐No

c. Been a patient in a hospital, clinic, sanatorium, or other medical facility?   ☒Yes ☐No

d. Had electrocardiogram, X-ray, or other diagnostic test?   ☐Yes ☒No

e. Been advised to have any diagnostic test, hospitalization, treatment or surgery which was not completed?   ☐Yes ☒No

## 7.

Have any of your parents, brothers or sisters ever had diabetes, high blood pressure, or heart disease before age 60? If yes, specify person and condition below.   ☐Yes ☒No

## 8.

Have you any deformity, lameness or amputation?   ☐Yes ☒No

## 9. DETAILS

(for yes answers) Include: i. Question Number, ii. Diagnosis & Treatment, iii. Results, iv. Dates & Duration, v. Names & Address of all attending physicians & medical facilities.

SYNTHROID 0.2 MG. DAILY

HORMONE REPLACEMENT.

THYROID REMOVED IN 82'

LAST MEDICAL CHECK UP

JANUARY OF 1987

CONDITION NORMAL.

DR. THOMAS FRAWLEY
14003 BAYWOOD VILLAGE DR.
ST. LOUIS, MO. 63141
(314) 434-2890
(314) 569-6934
621 S. NEW BALLAS
SUITE 1013
ST. LOUIS, MO. 63141

01-85 APP Cat. #114245

4

**Pleadings in state court**                    **Exhibit A**

OUT OF FORCE

**AGREEMENT**

It is hereby agreed by the undersigned that:

If all of the following conditions precedent to insurance are fulfilled, that is

(a) a completed and properly signed application, Part 1 and Part 2, is furnished to The Equitable, and the full first premium for the policy is paid; and

(b) to the best of my knowledge and belief the statements and answers in all parts of the application were true and complete when made and continue to be true and complete, without material change, as of the time of payment of such premium; and

(c) The Equitable is satisfied after such investigation and medical examinations as it may require that the Proposed Insured is at the time of payment of such premium insurable under its rules and standards for insurance either exactly as applied for or at a higher premium rate or for a lesser amount of insurance or on some other modified or restricted basis;

then the insurance for which the Proposed Insured is so insurable shall—upon the terms of the policy The Equitable would issue—take effect at either the time of payment of such full first premium or the time of completion of Part 2 of the application, whichever is later.

Unless the conditions precedent specified in (a), (b) and (c) above are fulfilled, no insurance shall take effect.

If the policy is issued other than exactly as applied for, then unless it is accepted and any balance of premium due thereon is paid on or before the 20th day after the "Date of Issue" stated in the policy, the policy shall not take effect and all insurance shall terminate on such 20th day.

DI-85 APP Cal. #114245

If a policy does not take effect, any premium paid in connection with this application will be returned.

If insurance becomes payable under this Agreement, the premium paid for it will be retained.

The statements and answers in all parts of this application are true and complete to the best of my knowledge and belief and are made to induce The Equitable to enter into this Agreement and to issue any policy which may be issued upon this application. No agent or medical examiner has authority to modify this Agreement or to waive any of The Equitable's rights or requirements.

Amount Paid
With Application: OE $

DI $   77.61

(Checks must be drawn to the order of Equitable Life and are received subject to collection.)

Signature of
Proposed Insured   X   Leslie Carole Berkemer

Dated at _____ City _____ State _____
ST. LOUIS, MO

Dated on
Mo/Day/Year   6-18-87

Signature of
Agent   John A. Valenti

A   73217

This Conditional Receipt must not be detached unless the Application is signed and the first premium is collected.

**Pleadings in state court**                                    **Exhibit A**

## ACKNOWLEDGEMENT AND AUTHORIZATIONS

**UNDERWRITING PROCEDURES.**
I have received a statement of the underwriting procedures of The Equitable Life Assurance Society of the United States (Equitable), which describes how and why Equitable obtains information on my insurability, to whom such information may be reported and how I may obtain it. The statement also contains the notice required by the Fair Credit Reporting Act.

**AUTHORIZATIONS.**
**To Obtain Medical Information.** I authorize any physician, hospital, other medical practitioner or facility, insurance company, and the Medical Information Bureau to release to Equitable and its legal representative any and all information they may have about any diagnosis, treatment and prognosis regarding my physical or mental condition.

**To Obtain Non-Medical Information.** I authorize any employer, business associate, government unit, financial institution, Consumer Reporting Agency, and the Medical Information Bureau to release to Equitable and its legal representative any information they may have about my occupation, avocations, finances, driving record, character and general reputation. I authorize Equitable to obtain investigative consumer reports, as appropriate.

Date
Mo/Day/Yr.    6-9-87

**To Use and Disclose Information.** I understand that the information that I authorize Equitable to obtain will be used by Equitable to help determine my insurability or my eligibility for benefits under an existing policy.
I authorize Equitable to release information about my insurability to its reinsurers, my Equitable Agent, and to the Medical Information Bureau, all as described in the statement of Equitable's underwriting procedures, or to other persons or businesses performing business or legal services in connection with my application or claim of eligibility for benefits, or as may be otherwise lawfully required or as I may further authorize.
I understand that I have the right to learn the contents of any report of information (through my physician, in the case of medical information).

**COPY OF AUTHORIZATIONS.**
I have a right to ask for and receive a true copy of this Acknowledgement and Authorizations signed by me. I agree that a reproduced copy will be as valid as the original.

**DURATION.**
I agree that these authorizations will be valid for 12 months from the date shown below.

Leslie Carol Berberger
Signature of Proposed Insured

CUT OF FORCE

DI-85 APP Cat. #114245                                                                     6

**Pleadings in state court**                                        **Exhibit A**

Electronically Filed - City of St. Louis - September 18, 2019 - 11:30 AM

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI

LESLIE CAROLE BURKEMPER )
)
      Plaintiff, )
)   Cause No.: 1922-CC11491
vs. )
)   Division No.: 1
)
AXA EQUITABLE LIFE INSURANCE, et )
al. )
)
)
      Defendants. )

<u>ENTRY OF APPEARANCE</u>

      COMES NOW Michael J. Payne and the law firm of Frankel, Rubin, Klein, Siegel, Payne & Pudlowski, P.C. and hereby enters his appearance on behalf of Plaintiff Leslie Carole Burkemper.

                 Respectfully submitted,

                 FRANKEL, RUBIN, KLEIN,
                 SIEGEL, PAYNE & PUDLOWSKI, P.C.

      By:  /s/Michael J. Payne
           MICHAEL J. PAYNE, 51967
           mpayne@frankelrubin.com
           Attorney for Defendant
           231 South Bemiston Avenue, Suite 1111
           Clayton, Missouri  63105
           Telephone:  (314) 725-8000
           Facsimile:  (314) 726-5837

**Pleadings in state court**                                    **Exhibit A**

Electronically Filed - City of St. Louis - September 18, 2019 - 11:30 AM

<u>**CERTIFICATE OF SERVICE**</u>

     The undersigned certifies that a true copy of the foregoing was sent via the Missouri Electronic Filing System to the counsel of record, September 18, 2019:

            /S/ MICHAEL J. PAYNE_____
            MICHAEL J. PAYNE

**Pleadings in state court**                                            **Exhibit A**

# IN THE 22ND JUDICIAL CIRCUIT, CITY OF ST LOUIS, MISSOURI



| Judge or Division:<br>REX M BURLISON | Case Number: 1922-CC11491 | Special Process Server 1 |
|---|---|---|
| Plaintiff/Petitioner:<br>LESLIE CAROLE BURKEMPER | Plaintiff's/Petitioner's Attorney/Address<br>MARY ELIZABETH PARATO<br>231 S BEMISTON AVENUE STE 111<br>CLAYTON, MO 63105 | Special Process Server 2 |
| vs. | | Special Process Server 3 |
| Defendant/Respondent:<br>AXA EQUITABLE LIFE INSURANCE<br>COMPANY | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD<br>SAINT LOUIS, MO 63101 | *RECEIVED*<br>OCT 01 2019<br>COLE COUNTY<br>SHERIFF'S OFFICE<br>(Date File Stamp) |
| Nature of Suit:<br>CC Breach of Contract | | |

## Summons in Civil Case

**The State of Missouri to:** DISABILITY MANAGEMENT SERVICES, INC.

**Alias:**

REGISTERED AGENTS LOLUTIONS INC
3225-A EMERALD LANE
JEFFERSON CITY, MO 65109

*COURT SEAL OF*

**COLE COUNTY**

*CITY OF ST LOUIS*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

**September 13, 2019**

_____
Date

*Thomas Kloppinger*
_____
Clerk

Further Information:

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☑ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to *Reg Agent Solutions - S.K.* (name) *Designee* (title).

☐ other: _____

Served at *3225 Emerald Lane* (address)

in *Cole* (County/City of St. Louis), MO, on *10-4-19* (date) at *10:50 AM* (time).

*Sheriff John P Wheeler*
_____
Printed Name of Sheriff or Server

By *Dep. John Stobel 81*
_____
Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____
Date          Notary Public

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary Supplemental Surcharge | $ 10.00 |
| Mileage | $_____ ( _____ miles @ $_____ per mile) |
| Total | $_____ |

*ENTERED*
*OCT 17 2019*
*S W*

*7462*
*$30.*

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

**Pleadings in state court**

**Exhibit A**